IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

7/24/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

| | | |
|---|---|---|
| CHRISTOPHER WILSON, | ) | |
| | ) | Civil Action No.: 7:25-cv-00920 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| MATTHEW T. WARD, *et al.*, | ) | By:    Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

On December 12, 2025, Plaintiff Christopher Wilson filed this action against Defendants Sheriff Matthew T. Ward, Deputy Zachary K. Durham, and Deputy John Doe[1] of the Botetourt County Sheriff's Office (collectively, "Defendants"). (*See generally* Compl. [ECF No. 1].) Wilson alleges that he suffered injuries while being transported in a police vehicle and asserts four claims against the Defendants: (1) negligence, gross negligence, and intentional acts against Deputies Durham and Doe; (2) vicarious liability against Sheriff Ward; (3) negligent and grossly negligent hiring and retention against Sheriff Ward; and (4) negligent entrustment against Sheriff Ward. (*Id.* ¶¶ 23–46.) This matter is before the court on Defendants' motion to dismiss all claims. (Mot. Dismiss [ECF No. 7].) For the reasons stated below, the court will grant Defendants' motion in part.

## I.    BACKGROUND

The facts are recited as Wilson alleges in his Complaint, and, at this stage, the court accepts the allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Deputy Doe is unknown to Wilson at this time, although Wilson alleges that Doe was a deputy with the Botetourt County Sheriff's Office during the relevant time period and is a resident of Virginia. (*Id.* ¶¶ 6–8.)

On January 18, 2024, Deputies Durham and Doe arrested Wilson in Botetourt County, Virginia, on an extradition warrant issued by authorities in West Virginia. (Compl. ¶ 12.) "[W]ith the express permission and consent of . . . [Sheriff] Ward," the Deputies placed Wilson in the back of their police vehicle but allegedly failed to properly secure Wilson with a seatbelt. (*Id.* ¶¶ 13–14.) During transport to the Botetourt County Jail, the Deputies allegedly "weav[ed] in and out of different lanes of traffic, . . . braking suddenly and unnecessarily." (*Id.* ¶ 20.) As a result, Wilson "struck his body on the interior of the vehicle," thereby injuring himself and exacerbating a preexisting condition. (*Id.* ¶ 22.) Wilson alleges that the Deputies' actions were "performed to taunt" him. (*Id.* ¶ 21.)

Wilson initiated this action on December 12, 2025, alleging four claims against Defendants: (1) negligence, gross negligence, and intentional acts against Deputies Durham and Doe; (2) vicarious liability against Sheriff Ward, on the basis of the Deputies' negligence; (3) negligent and grossly negligent hiring and retention against Sheriff Ward; and (4) negligent and grossly negligent entrustment against Sheriff Ward. (*Id.* ¶¶ 23–46.) He seeks $5,000,000 in damages, jointly and severally, from Defendants. (*Id.* Demand.) On January 13, 2026, Defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim. Fed. R. Civ. P. 12(b)(1), 12(b)(6). (*See* Def. Mot. Dismiss; Def. Br. Supp. Mot. Dismiss ("Def. Br.") [ECF No. 8].) The matter has been fully briefed, and it is now ripe for disposition.

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) challenge the court's jurisdiction over the subject matter of the complaint. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A defendant can challenge the court's subject-matter jurisdiction

in one of two ways: (1) by asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based"; or (2) by demonstrating that "the jurisdictional allegations of the complaint were not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

But "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946). When assessing subject-matter jurisdiction, courts must ensure to maintain "the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006); *see Reddy v. Buttar*, 38 F.4th 393, 399 (4th Cir. 2022) (explaining that the merits question of whether a claim is valid "is something to be litigated and determined" and, as such, "does not go to the power of the court to make the determination—its subject matter jurisdiction").

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating

the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

### III.    ANALYSIS

Defendants move to dismiss Wilson's Complaint on several grounds. First, they argue that Wilson's action is barred by a one-year statute of limitations. (Def. Br. at 6–9.) Second, they argue that, even if Wilson's Complaint was timely filed, the court lacks jurisdiction over certain claims under the doctrine of sovereign immunity. (*Id.* at 9–11.) Finally, as to Wilson's remaining claims, Defendants argue that he fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 12–19.) The court addresses each argument in turn.

### A.  Defendants' Statute-of-Limitations Defense

At the threshold, Defendants argue that Wilson's suit[2] is time-barred by Virginia Code § 8.01-243.2, which provides that

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within *one year* after the cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

Va. Code Ann. § 8.01-243.2 (emphasis added). (*See* Def. Br. at 6–9.) Specifically, Defendants argue that, when Deputies Durham and Doe placed Wilson in custody in their police vehicle, which they contend is "an extension of" the Botetourt County Jail, Wilson became a "person

---

[2] Wilson asserts his state-law claims only based on diversity jurisdiction. *See* 28 U.S.C. § 1332. (*See* Compl. ¶ 9.) His claims are not brought pursuant to 42 U.S.C. § 1983.

confined." (*Id.* at 8.) Therefore, by filing his Complaint one year and eleven months after the 2024 incident, Wilson was late to initiate his suit. The court disagrees.

Section 8.01-243.2's one-year limitations period applies to suits (1) filed by "person[s] confined in a state or local correctional facility" at the time the cause of action accrues, and (2) that relate to conditions of that confinement. Va Code Ann. § 8.01-243.2; *Bing v. Haywood*, 722 S.E.2d 244, 246 (Va. 2012). As to the first element, the Fourth Circuit and Virginia courts have concluded that, in some respects, the statute applies broadly—that is, it does not differentiate between actions filed by pretrial detainees and post-conviction prisoners, including those filed after release from confinement. *See Lucas v. Woody*, 756 S.E.2d 447, 450–51 (Va. 2014)*; Bing*, 722 S.E.2d at 244. But courts have more narrowly interpreted what it means to be confined, and where. Because the Virginia legislature "chose its words in § 8.01-243.2 with care," courts hew closely to the meaning of "state or local correctional facility," as defined by Virginia Code § 53.1-1.[3] *Lloyd v. Morgan*, No. 4:14cv107, 2015 WL 1288346, at *9 (E.D. Va. Mar. 20, 2015) (finding that § 8.01-243.1 did not apply to the plaintiff's claims because, even though she was restrained in handcuffs, in the custody of the sheriff, and being transported from the court to a juvenile detention center for processing, the statute did not contemplate juvenile centers, or the transport thereto, as state and local correctional facilities); *Kovari v. Brevard Extraditions, LLC*, No. 5:18-cv-00070, 2019 WL 6689921, at *3 (W.D. Va. Dec. 6, 2019) (concluding that § 8.01-243.2 did not apply to the plaintiff's claim because, at the time

---

[3] Under Virginia law, a "'[l]ocal correctional facility' means any jail, jail farm or other place used for the detention or incarceration of adult offenders, excluding a lock-up, which is owned, maintained, or operated by any political subdivision or combination of political subdivisions of the Commonwealth," and "'[s]tate correctional facility' means any correctional center or correctional field unit used for the incarceration of adult offenders established and operated by the Department of Corrections, or operated pursuant to the Corrections Private Services Act (§ 53.1-261 et seq.)." Va. Code Ann. § 53.1-1.

of his injuries, he was in the custody of an extradition service that contracted with the local sheriff's office, not the Virginia Department of Corrections, and, therefore, he was not "incarcerated in a local or state correctional facility"). In other words, not *every* form of custody falls under § 8.01-243.2; rather, the key inquiry is whether an individual was under "the custody and control" of a state or local correctional facility. *Marlowe v. Sw. Va. Reg'l Jail Auth.*, 904 S.E.2d 238, 241, 245–46 (Va. Ct. App. 2024).

Wilson's mere presence in the back of the police vehicle, albeit restrained and on his way to the Botetourt County Jail, did not constitute confinement in a state or local correctional facility under Virginia law. *See Lloyd*, 2015 WL 1288346, at *9. Defendants' insistence that the police vehicle constituted an "extension" of the Jail is flawed, as Wilson was not under the "custody and control" of the Jail in the first place—that is, he had not yet been presented to the magistrate, charged, or taken for processing.[4] *Compare Marlowe*, 904 S.E.2d at 241, 245–46 (applying § 8.01-243.2 because plaintiff had already been processed by the Wise County Justice Center and fallen under "the custody and control of the local correctional facility," and was injured during transport in a Southwest Virginia Jail Authority van) *and Bing*, 722 S.E.2d at 247 (applying § 8.01-243.2 because plaintiff had already been transported and was being processed at a regional jail)*, with Lloyd*, 2015 WL 1288346, at *3, *9. The court is not persuaded, based on the plain language of § 8.01-243.2, that a "correctional facility" comprises the backseat of a police cruiser. Defendants' argument that any form of law-enforcement custody triggers the

---

[4] In their Reply, Defendants urge the court to disregard Wilson's allegations that he had not yet been processed or presented to the magistrate at the Botetourt County Jail, since he raised them in his Brief in Opposition, not in the Complaint. (Def. Reply at 5–6 [ECF No. 11].) But it can be reasonably inferred from the allegations in the Complaint—namely, that Wilson was arrested and *en route* to the Jail—that he had not been processed and booked by the Jail, particularly to confirm that he was the same Christopher Wilson named on the extradition warrant.

statute sweeps too broadly. *See Marlowe*, 904 S.E.2d at 430–31 (noting that § 8.01-243.2's limitations period may apply to claims arising outside of the four walls of a correctional facility, but only if the plaintiff is already under the custody and control of that correctional facility). Therefore, because Wilson asserts a tortious event that occurred *en route* to a local jail and before he was presented to a magistrate—not events that occurred once he came under the jail's custody and control—Wilson's suit is not time-barred.[5]

### B. Defendants' Sovereign-Immunity Argument

Next, Defendants move to dismiss the claims[6] asserted against them in their official capacities, arguing that they are entitled to Eleventh Amendment immunity.[7] (Def. Br. at 9–10.) "It is well established that the Eleventh Amendment bars suit in federal court by an individual citizen against a sovereign state of the Union." *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.2d 46, 48 (4th Cir. 1996). And, in Virginia, when an individual citizen asserts official-capacity claims against a sheriff's office (or individuals therein) for monetary damages, the suit is considered a suit against the Commonwealth itself, thereby entitling defendants to immunity in their official capacities. *See Kastenbaum v. Andis*, No. 1:24CV00054, 2025 WL 2795305, at *2–3 (W.D. Va. Sep. 29, 2025); *Clay v. Campbell Cnty. Sheriff's Off.*, No. 6:12-cv-00062, 2013 WL 3245153, at *4 (W.D. Va. June 26, 2013); *Bell v. City of Roanoke Sheriff's Off.*,

---

[5] Since § 8.01-243.2 doesn't apply, Wilson's suit is governed by Virginia's two-year statute for general personal injury actions. *See Kovari*, 2019 WL 6689921, at *3 (citing Va. Code Ann. § 8.01-243). Wilson initiated this action in December 2025, less than two years after his January 2024 arrest. (*See generally* Compl.)

[6] Wilson does not clarify which of his four claims are asserted against Defendants in their individual and official capacities. Insofar as Wilson brings all of his claims against Defendants in their official capacities, for the reasons discussed herein, they are barred by sovereign immunity.

[7] Defendants do not specify whether they move to dismiss the official-capacity claims under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

No. 7:09-CV-00214, 2009 WL 5083459, at *2 (W.D. Va. Dec. 23, 2009) ("It is well settled that, in Virginia, suits against a Sheriff or her deputies in their official capacities . . . are considered suits against the state.").

Here, Wilson only seeks monetary damages against Sheriff Ward and the deputies.[8] (*See* Compl. Demand.) Wilson has not argued that an exception applies to vitiate this immunity and, in his Opposition Brief, all but concedes the issue. (Pl.'s Opp'n at 7–8.) Therefore, based on the well-settled authority cited above, the court will dismiss all claims against Defendants in their official capacities.

### C. Defendants' Remaining 12(b)(6) Arguments

Finally, Defendants argue that Wilson has failed to state a claim in all four counts of his Complaint. Having dismissed Wilson's official-capacity claims against Defendants, the court now turns to each of Wilson's claims brought against Defendants in their individual capacities.

1. **Count 1: Negligence, gross negligence, and intentional acts**[9]

Defendants first seek to dismiss Wilson's simple negligence claims, arguing that they are protected by the doctrine of sovereign immunity. (Def. Br. at 10–11.) To determine if

---

[8] Sovereign immunity would not bar a claim seeking prospective injunctive relief against a government official in his official capacity. *See Franks v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002) (discussing "[t]he long-standing doctrine of *Ex parte Young*").

[9] The court interprets Wilson's claim of "intentional acts" as a claim for willful and wanton negligence. This interpretation is consistent with Virginia law, which occasionally uses the terms interchangeably. *See Infant C. v. Boy Scouts of Am. Inc.*, 391 S.E.2d 322, 327 (Va. 1990). Defendants have also addressed Wilson's allegations under the umbrella of simple negligence, gross negligence, and willful and wanton conduct. (*See* Def. Br. at 12–14.)

sovereign immunity applies in this context, Virginia courts employ a four-factor test ("the

*James* test") and consider:

> (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.

*Messina v. Burden*, 321 S.E.2d 657, 663 (Va. 1984) (citing *James v. Jane*, 267 S.E.2d 108, 113 (Va.

1980)). The parties dispute the fourth factor. (*See* Def. Br. at 10; Pl.'s Opp'n at 8–9.)

Acts requiring "the use of judgment and discretion" typically trigger sovereign

immunity, while those involving ordinary (or "ministerial") duties do not. *Messina*, 321 S.E.2d

at 663; *see also Riddick v. Watson*, 503 F. Supp. 3d 399, 426 (E.D. Va. 2020). In this context,

operating a motor vehicle—specifically, a law enforcement vehicle—can be both a ministerial

act (which would not confer immunity from suit), or it can be an act that requires judgment

and discretion (which does confer immunity from suit). Relevant here, transporting an arrestee

requires "substantial judgment and discretion." *Cunningham v. Rossman*, 80 Va. Cir. 543, at *6

(Va. Cir. Ct. July 12, 2010) (unpublished) ("During transit, the officer must exercise her

discretion, be aware of her surroundings, be on guard for any unusual or threatening behavior

by the detainee, and take into consideration her own safety as well as the safety of the detainee

and the public."); *Dyches v. United States*, No. 8:25-cv-1378, 2026 WL 145231, at *2 (D.S.C. Jan.

20, 2026) ("[H]ow to escort and secure a detainee in a courthouse environment, including

route selection and the manner of movement[,] are the type of transport and security

judgments courts routinely recognize as discretionary and susceptible to policy considerations,

including safety, security, and logistics."); *cf. Chappell v. United States*, No. 1:16cv206, 2018 WL

4002563, *4 (N.D.W. Va. 2018) (noting, in the Federal Tort Claims Act setting, that a prison official's method of restraining and transporting a prisoner required use of judgment). On the other hand, "the simple operation of an automobile" is not an act requiring judgment and discretion, as it does "not involve special risks arising from governmental activity." *Heider v. Clemons*, 400 S.E.2d 190, 191 (Va. 1991) (holding that police officer who hit a motorcyclist after he had served process was not entitled to immunity because his conduct "did not involve . . . judgment or discretion about the proper means of effectuating the governmental purpose"); *see also Ellis v. Jolley*, 923 S.E.2d 304, 309 (Va. 2025) (holding that city garbage collector was not immune because, at the time of accident, he was not collecting garbage in fulfillment of his duties). Importantly, courts ask if operating the government vehicle was necessary to "effectuat[e] the governmental purpose," often "by embracing special risks in an emergency situation." *Cunningham*, 80 Va. Cir. at *5.

Here, it is alleged that Deputies Durham and Doe were effectuating the governmental purpose of transporting an arrestee. Wilson claims that the Deputies arrested him on January 18, 2024, on an extradition warrant, then placed him into the back of the police vehicle with the express purpose of delivering him to Botetourt County Jail. (Compl. ¶¶ 12–13, 17.) As alleged, they were not simply "returning to headquarters after completing a government function"—an act which would qualify as ministerial—but, instead, were carrying out duties that required them to embrace the special risks that arise from police work.[10] *See Cunningham*, 80 Va. Cir. 543 at *6; *Dyches*, 2026 WL 145231, at *2. Therefore, at the time Wilson's injuries

---

[10] Whether Deputies Durham and Doe employed *sufficient* judgment and discretion is pertinent to Wilson's gross-negligence claim.

occurred, Deputies Durham and Doe were engaged in an act requiring judgment and discretion, which entitles them to the shield of sovereign immunity. Wilson's simple negligence claims will be dismissed.

Defendants also contend that Wilson fails to state a plausible claim of gross negligence. (Def. Br. at 12–14; Def. Reply at 11–12 [ECF No. 11].) Unlike simple negligence claims, sovereign immunity cannot be invoked to bar claims of gross negligence or intentional conduct in Virginia. *See Cunningham v. Ruffin*, No. 1:15-cv-1650, 2016 WL 6396015, at *7–8 (E.D. Va. Oct. 26, 2016) (citing *Glasco v. Ballard*, 452 S.E.2d 854, 856 (Va. 1995)); *Colby v. Boyden*, 400 S.E.2d 184, 187 (Va. 1991) ("Under Virginia law, where . . . a defendant's actions are clothed with sovereign immunity, a plaintiff must establish gross negligence in order to prevail."). Gross negligence involves "an utter disregard of prudence amounting to a complete neglect of the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others . . . amount[ing] to the absence of slight diligence, or the want of even scant care." *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987) (cleaned up); *see also Fijalkowski v. Wheeler*, 801 Fed. App'x 906, 914 (4th Cir. 2020). Gross negligence requires "indifference" and "a degree of negligence that would shock fair-minded persons." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). A court must dismiss a gross negligence claim if "defendants exercised some degree of care" or "no reasonable juror could find that gross negligence had been established." *Fijalkowski*, 801 Fed. App'x at 914.

A plaintiff typically states a valid gross negligence claim by alleging more than the defendant's mere inattention or simple traffic infractions. *See Pino v. Sch. Bd. for City of Chesapeake*, No. CL15-637, 2015 WL 13345655, at *3 (Va. Cir. Ct. Dec. 4, 2015) (noting that

more than mere inattention or traffic infractions are required to allege gross negligence). For example, conducting especially dangerous maneuvers, intentionally vexing other drivers in "road rage" incidents, or disregarding known hazards generally constitute gross negligence. *See id.* (finding that a driver's stop in the middle of the intersection with sole purpose of arguing with another driver stated a claim for gross negligence); *Reagan v. Reagan*, 207 S.E.2d 888, 890 (Va. 1974) (determining that reasonable jury could infer that defendant crossing a four-lane highway with heavy oncoming traffic was grossly negligent); *Clark v. Clark*, 221 S.E.2d 123, 126 (Va. 1976) (holding that neglecting passenger's safety by disregarding road signs, drinking, and speeding amounted to gross negligence).

Defendants argue that Wilson cannot state a claim for gross negligence, asserting that Wilson "fails to allege any fact giving rise to a duty to secure a prisoner with a seatbelt or to allege what the 'existing conditions' were or what a 'reasonable speed' would have been for said conditions." (Def. Br. at 13.) But such framing is too narrow, and it overlooks that Virginia instills a general duty of care in all of its motorists—Deputies Durham and Doe included—to use reasonable care towards passengers and other motorists and to obey all traffic laws and regulations.[11] *See Pino*, 2015 WL 13345655, at *2. In any event, as discussed below, Wilson's allegations stem from more than the Deputies' alleged failure to strap him in and include other

---

[11] Defendants note that, at the time of the alleged injury, Virginia law did not require seatbelts for passengers in a law-enforcement vehicle when "in custody or traveling in circumstances which render the wearing of such safety belt system impractical." *See* Va. Code. Ann. § 46.2-1094. (Def. Br. at 13 n.1). Nonetheless, the allegation that Wilson was not strapped into the car is, standing alone, not a dispositive basis upon which to dismiss Wilson's gross negligence claim simply because the statute allows for such an exception. In other words, the statute does not supplant the general standard of care. *See Snell v. Reid*, No. 3:21-cv-24, 2022 WL 2812056, at *7 (W.D. Va. July 18, 2022) (stating that a statute may set the standard of care for a negligence *per se* claim, but it does not create or otherwise replace a general duty (citing *Steward v. Holland Fam. Props., LLC*, 726 S.E.2d 251, 254 (Va. 2012))). There remains a general duty to operate a motor vehicle with reasonable care, and, as Wilson has adequately pleaded, the Deputies were grossly negligent in breaching that duty.

allegations of grossly negligent driving. (*See* Compl. ¶¶ 20–21, 24.) At this preliminary stage, the court finds that Deputies Durham and Doe had, at least, an ordinary duty of care to operate the vehicle with due care towards Wilson and other drivers.

Second, Defendants argue that Wilson's allegations "do not rise . . . to the level of gross negligence or intentional conduct." (*Id.*) Again, the court disagrees. In addition to Wilson's allegations that the Deputies failed to secure him in a seatbelt, he alleges that they "operated the motor vehicle above a reasonable speed for existing conditions," failed to give "full time and attention to the operation of [the] motor vehicle," weaved unnecessarily in and out of traffic, and generally failed to heed the safety of Wilson and others on the road.[12] (Compl. ¶¶ 20–21, 24.) Though Wilson must ultimately prove these allegations, at this stage, he has alleged more than the Deputies' "inadequacy" or mere inattention when operating the motor vehicle. *See Fijalkowski*, 801 Fed. App'x at 914 (4th Cir. 2020); *Pino*, 2015 WL 13345655, at *3. What's more, Wilson's allegation that the Deputies drove unsafely solely to taunt him. (Compl. ¶ 21.) Given the Deputies' roles as public servants, such conduct shocks the conscience. *See Cowan*, 603 S.E.2d at 918. Overall, Wilson has sufficiently alleged that the Deputies displayed an "utter disregard of prudence" when operating their vehicle and did not employ any degree of care. *Frazier*, 362 S.E.2d at 691.

For similar reasons, Wilson has stated a claim for willful and wanton conduct. Under Virginia law, "the difference between ordinary negligence and gross negligence is one of

---

[12] Wilson alleges additional facts in his Opposition that were not initially alleged in his Complaint. (Pl.'s Opp'n. at 8–9.) Under well-settled law, the court does not consider those allegations that are not in the complaint. *See Chiao v. United Airlines, Inc.*, No. ELH-25-687, 2026 WL 251732, at *14 (D. Md. Jan. 30, 2026) ("[The court] may only consider the allegations that appear in the Amended Complaint, not in the Opposition."). But even if it did, they would only bolster the court's conclusion, based only on the allegations contained in the Complaint, that Wilson has adequately pleaded gross negligence.

degree," whereas the difference between "any form of negligence and . . . willful and wanton conduct . . . is a matter of kind." *Green v. Ingram*, 608 S.E.2d 917, 923 (2005). An act of willful and wanton conduct—also referred to as "willful and wanton negligence," *see id.*—requires the actor to "intend[] his act, but not the resulting harm." *Id.* (quoting *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 328 (Va. 1990)). In other words, willful and wanton conduct rises above grossly negligent conduct in that it "conveys the idea of purpose or design, actual or constructive." *Boward v. Leftwich*, 89 S.E.2d 32, 35 (Va. 1995) (quoting *Thomas v. Snow*, 174 S.E. 837, 839 (Va. 1934)). Here, Wilson's allegation that the Deputies drove their vehicle to taunt him sufficiently "conveys the idea of purpose or design." *Id.* Coupled with the principle that questions of negligence are generally determinations for the jury, the court will deny Defendants' motion as to Count I of Wilson's Complaint, insofar as it is based on gross negligence and/or intentional acts. *See Fijalkowski*, 801 Fed. App'x at 914; *Chapman v. City of Virginia Beach*, 475 S.E.2d 798, 801 (Va. 1996).

### 2. Count 2: Vicarious liability

Defendants also move to dismiss Wilson's vicarious liability claim. Under Virginia law, "the doctrine of *respondeat superior* imposes tort liability on an employer for the negligent acts of its employees." *Sanchez v. Medicorp Health Sys.*, 618 S.E.2d 331, 334 (Va. 2005) (emphasis added). Thus, "an employer is liable for the tortious acts of its employee if that employee was performing the employer's business and acting within the scope of the employment when the tortious acts were committed." *Giant of Md., Inc. v. Enger*, 515 S.E.2d 111, 112 (Va. 1999).

In support of their motion, Defendants identify two purported flaws with Wilson's vicarious-liability claim. (Def. Br. at 14–15.) First, they argue that the authorities upon which

- 14 -

Wilson relies for the principle that a sheriff is vicariously liable for the acts of his deputies are

outdated (*e.g.*, the *Mosby/Miller* line of cases[13] from the nineteenth century, as well as *Agyeman*

*v. Pierce*, 26 Va. Cir. 140 (Dec. 11, 1991) (unpublished)), arguing that modern courts have

"questioned . . . the continued viability of these cases over the years." (Def. Br. at 14–15.)

Specifically, they point to *Harrison v. Prince William County Police Department*, in which the Eastern

District of Virginia opined, in dicta, that these principles "implicitly conflict[] with . . . more

modern authority, which does not distinguish between the head of a police department and

other discretionary government actors protected by sovereign immunity." 640 F. Supp. 2d

688, 712–13 (E.D. Va. 2009) (declining to follow *Agyeman*). But, as noted by the same court

seven years later,

> [*Harrison*] did not address the validity of [*Mosby/Miller*] or how
> the more modern authority had overturned the previous
> authority. Accordingly, it is fair to say there is a split of authority
> as to the liability of a sheriff under Virginia law for the acts of his
> deputies. . . . [*Mosby/Miller*] is still controlling law.

*White v. Chapman*, 119 F. Supp. 3d 420, 430 (E.D. Va. 2015); *see also Bell*, 2009 WL 5083459, at

*5 ("The Court's decision [in *Harrison*] did not, however, address the validity of *Miller*. This

court is of the opinion that, even in light of more modern decisions out of the Virginia Circuit

Court, *Miller* remains controlling authority.").

---

[13] *See Mosby Adm'r v. Mosby's Adm'r/Miller v. Jones*, 50 Va. 584, 602 (1853) ("[A] sheriff is liable *civiliter* . . . for all acts of his deputies, *colore officii*. . . . The acts and defaults of the deputy, *colore officii*, are considered in law as the acts and defaults of the sheriff, who is liable therefor in the same form of action as if they had been actually committed by himself."); *Moore's Adm'r v. Dawney*, 13 Va. 127, 132 (1808) ("The law looks upon the Sheriff and his officers as one person: he is to look to his officers that they do their duty; for if *they* transgress, *he* is answerable to the party injured by such transgression"); *James v. M'Cubbin*, 6 Va. 273, 274–75 (1800).

Defendants fail to establish that a sheriff *cannot* be vicariously liable for the actions of his deputies under any circumstance. *Id.* That proposition is refuted by the existence of the *James* test, which provides that a sheriff can invoke sovereign immunity in response to a vicarious-liability claim, not that a sheriff *can never* be vicariously liable. For example, in *Lloyd v. Morgan*, the court applied the *James* factors, *see supra* p. 8, to determine whether a sheriff was vicariously liable for the acts of his employees. No. 4:14cv107, 2015 WL 1288346, at *12 (E.D. Va. Mar. 20, 2015); *see also White*, 119 F. Supp. 3d at 430 (holding sheriff-defendant vicariously liable for his deputy in relation to a malicious-prosecution claim); *Kastenbaum*, 2025 WL 2795305, at *7 (holding a sheriff vicariously liable for the gross negligence of his deputy for insufficiently screening applicant during the hiring process); *Orga v. Williams*, 996 F.2d 1211, at *4 (4th Cir. 1993) (unpublished). Therefore, under certain conditions—including those involving allegations of gross negligence or intentional conduct—sheriffs may be vicariously liable for the acts of their deputies.

Alternatively, Defendants argue that, because Wilson fails to state a plausible claim of negligence against Deputies Durham and Doe, he also fails to state a claim against Sheriff Ward. (Def. Br. at 15.) On this score, the court agrees, in part. Because Deputies Durham and Doe are immune from Wilson's simple negligence claims, as discussed above, Ward likewise cannot be vicariously liable for the simple negligence claims against his Deputies. But that is not the case for the gross negligence and intentional conduct claims. Because Sheriff Ward's Deputies are not immune from Wilson's claims of gross negligence or willful and wanton

conduct, Sheriff Ward can be vicariously liable for such claims.[14] *See Kastenbaum*, 2025 WL 2795305, at \*7; *Bell*, 2009 WL 5083459, at \*5. Therefore, insofar as Wilson's vicarious liability claim against Sheriff Wilson is based on the gross negligence and intentional conduct of Deputies Durham and Doe, he has stated a claim.

### 3.  Counts 3 & 4: Negligent hiring/retention and negligent entrustment claims

Finally, Defendants move to dismiss Wilson's (1) negligent and grossly negligent hiring/retention and (2) negligent and grossly negligent entrustment claims against Sheriff Ward, arguing that "the [C]omplaint contains nothing more than a formulaic recitation of the elements of those claims." (Def. Br. at 15.) The court agrees.

"Virginia law recognizes the independent torts of negligent hiring and negligent retention." *See Jones v. Kroger Ltd. P'ship I*, 80 F. Supp. 3d 709, 715 (W.D. Va. 2015) (citing *Se. Apts. Mgmt., Inc. v. Jackman*, 513 S.E. 2d 395, 397 (Va. 1999)). To state a claim for negligent hiring, a plaintiff must show that "an employee's propensity to cause injury to others was either known or should have been discovered by reasonable investigation." *Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E. 2d 426, 431 (Va. 2000); *see also Allen v. Barksdale*, No. 5:25-cv-00001, 2025 WL 1809322, at \*5 (W.D. Va. July 1, 2025). To state a claim for negligent retention, a plaintiff must show that "the employer knew or should have known [an employee] was dangerous and likely to harm [others]." *Doe ex. rel. Doe v. Baker*, 857 S.E.2d 573, 582 (Va. 2021). The tort also requires the plaintiff to make "an amplified showing that both the nature and

---

[14] The parties do not dispute that Deputies Durham and Doe were Sheriff Ward's subordinates at the time of Wilson's injury, or that they were acting in the scope of their employment during his arrest and subsequent transport to the Botetourt County Jail. (*See* Compl. ¶ 16; Def. Br. at 11.)

the gravity of the risk render unreasonable any mitigating response short of termination." *A.H. ex. Rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 474 (Va. 2019).

Wilson fails to state a claim for either negligent hiring or retention. He formulaically[15] alleges that Sheriff Ward failed to properly screen and supervise the Deputies upon their hire and that he "should have known that [the Deputies] were not competent and were unsuitable to exercise their duties." (Compl. ¶¶ 38–40.) *See also Iqbal*, 556 U.S. at 678. In the absence of additional allegations, Wilson's negligent and grossly negligent hiring claims fall short of sufficiently alleging that Sheriff Ward knew or should have known that either Deputies Durham or Doe had a "propensity to cause injury." *Doe*, 857 S.E.2d at 582. As for Wilson's allegations of negligent and grossly negligent retention, he similarly fails to plead that either of the Deputies were "dangerous," and he falls short of making the "amplified showing" necessary for his negligent-retention claim. *A.H.*, 831 S.E.2d at 474; *see also Allen*, 2025 WL 1809322, at *5 (dismissing plaintiff's negligent-hiring and retention claims because his allegations were purely conclusory, and he did not allege any facts regarding the employee's hiring process, the employee's dangerous qualities, or the employer's knowledge thereof).

Wilson's negligent-entrustment claim fails for the same reasons. To state a claim for negligent entrustment of property under Virginia law, "a plaintiff must allege that 'the owner knew, or had reasonable cause to know, that he was entrusting his [property] to an unfit [user] likely to cause injury to others.' . . . Typically, the Supreme Court of Virginia allows negligent entrustment claims 'only where the owner had notice of some physical or mental defect' of

---

[15] Although Wilson is correct that plaintiffs are "not required to plead internal personnel records and prior complaints uniquely within Defendants' possession" (*see* Pl.'s Opp'n at 13), he has entirely failed to allege "sufficient factual matter" supporting a plausible inference of negligent hiring or retention, *Iqbal*, 556 U.S. at 678.

- 18 -

the entrustee." *McKeown v. Rahim*, 446 F. Supp. 3d 69, 82 (W.D. Va. 2020) (first quoting *Denby v. Davis*, 188 S.E.2d 226, 229 (Va. 1972), then quoting *Lester v. SMC Transp., LLC*, No. 715CV00665, 2016 WL 4595696, at *5 (W.D. Va. Sep. 2, 2016)). Here, Wilson's allegations are merely conclusory recitations of the elements of the negligent-entrustment tort, and he consequently fails to sufficiently allege that Sheriff Ward knew, or should have known, that the Deputies were unfit to operate the vehicle or that they would present an unreasonable risk to others. (*See* Compl. ¶¶ 42–46.) *See also Milne v. Move Freight Trucking, LLC*, No. 7:23-cv-432, 2024 WL 762373, at *3 (W.D. Va. Feb. 20, 2024). Therefore, the court will dismiss Wilson's negligent and grossly negligent hiring, retention, and entrustment claims in their entirety.

## IV.     CONCLUSION

For these reasons, the court will grant Defendants' motion as to Wilson's negligent and grossly negligent hiring, retention, and entrustment claims (Counts 3 & 4), but it will deny the motion as to Wilson's claims of gross negligence, intentional acts, and vicarious liability (Counts 1 & 2).

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 24th day of July, 2026.

/s/ *Thomas T. Cullen* _____
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

- 19 -